## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |
| | **(Emergency Hearing Requested)** |
| **LIMETREE BAY REFINING, LLC** | |
| Plaintiff, | **Adv. Pro. _____** |
| v. | |
| **BEECHER COTTON, PAMELA COLON, SIRDINA ISAAC-JOSEPH, ESTHER CLIFFORD, SYLVIA BROWNE, ALVINA JEAN-MARIE ILARRAZA, FRANCIS E. CHARLES, THERESA J. CHARLES, HELEN SHIRLEY, ANISHA HENDRICKS, CRISTEL RODRIGUEZ, JOSIE BARNES, ARLEEN MILLER, ROSALBA ESTEVEZ, ISIDORE JULES, JOHN SONSON, VIRGINIE GEORGE, CLIFFORD BOYNES, CHRISTOPHER CHRISTIAN,  MARGARET THOMPSON, DELIA ALMESTICA, CARLOS CHRISTIAN, ANNA REXACH-CONSTANTINE, MERVYN CONSTANTINE, NEAL DAVIS,  EDNA SANTIAGO, GUIDRYCIA WELLS, O'SHAY WELLS, AARON G. MAYNARD, VERNE MCSWEEN, ROCHELLE GOMEZ, MYRNA MATHURIN, JOAN MATHURIN, LEOBA JOHN BAPTISTE, WARRINGTON CHAPMAN, AND ANNE MARIE JOHN BAPTISTE,** | |
| Defendants. | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

**DEBTOR'S <u>EMERGENCY</u> MOTION TO EXTEND THE AUTOMATIC
STAY AND, ADDITIONALLY OR IN THE ALTERNATIVE, GRANT PRELIMINARY
INJUNCTIVE RELIEF, HALTING THE PROSECUTION OF THE CLASS ACTION
<u>AGAINST DEBTOR AND NON-DEBTOR DEFENDANTS FOR 60 DAYS</u>**

---

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (CT) on July 27, 2021, or as soon as practical thereafter.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

1.      Limetree Bay Refining, LLC (the "**Limetree Refining**," or the "**Debtor**"), which, along with its debtor affiliates (together, the "**Debtors**"), are debtors and debtors in possession in the above-captioned chapter 11 cases, seeks entry of an order, substantially in the form attached hereto as Exhibit A (the "**Order**") (a) extending the automatic stay to prohibit the prosecution of the Class Actions (as defined below) with respect to the Non-Debtor Defendants (as defined below) or, in the alternative, (b) granting a temporary restraining order and preliminary injunction relief to halt the prosecution of the Class Actions (as defined below) against the Non-Debtor-Defendants (as defined below) for a period of 60 days, without prejudice to the right of the Debtor to seek a further stay of the Class Actions at any time before or after the expiration of such period.  In support thereof, Limetree Refining respectfully states as follows:

## I.  THE PARTIES

2.      The Debtors own and operate an oil refinery (the "**Refinery**") located on the island of St. Croix in the United States Virgin Islands.

3.      Four class actions are currently pending against the Debtor and certain non-debtor entities in the United States District Court for the Virgin Islands (the "**Virgin Islands Court**")— namely, *Cotton v. Limetree Bay Ventures, LLC,* Case No. 1:21-cv-00261 (D.V.I.) ("**Cotton**

Action"), *Shirley v. Limetree Bay Ventures LLC*, Case No. 1:21-cv-00259 (D.V.I.) ("**Shirley Action**"), *Charles v. Limetree Bay Ventures, LLC*, 1:21-cv-00260 (D.V.I.) ("**Charles Action**"), and *Boynes v. Limetree Bay Ventures, LLC,* Case No. 1:21-cv-00253 (D.V.I.) ("**Boynes Action**," and together with the Cotton Action, the Shirley Action and the Charles Action, the "**Class Actions**"). The defendants in the above-captioned adversary proceeding are plaintiffs in the Class Actions and shall be referred to collectively herein as the "**Class Action Plaintiffs**." In each of the Class Actions, the Class Action Plaintiffs aver that the Class Action Plaintiffs suffered alleged injury resulting from actions purportedly occurring at the Refinery.

4.       These Class Actions were filed against the Debtor and the following entities (collectively, the "**Non-Debtor Defendants**"):   Limetree Bay Ventures, LLC ("**Limetree Ventures**"), Limetree Bay Terminals LLC ("**Limetree Terminals**"), Arclight Capital Partners LLC, Freepoint Commodities, LLC, EIG Global Energy Partners, LLC, and BP Products North America.

## II.  JURISDICTION AND VENUE

5.       The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012 (the "**Amended Standing Order**"). The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are sections 105 and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rule 65 of the Federal Rules of Civil Procedures, as applicable under Rule 7065 of the Federal Rules of Bankruptcy Procedures, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

### III. PRELIMINARY STATEMENT

8.     As described in greater detail in the Shapiro Declaration (as defined below), on May 12, 2021, an incident occurred at the Refinery that caused a small amount of oil to disperse in certain areas downwind of the Refinery.   In response, on May 13, 2021, the Debtors voluntarily ceased all refining operations at the Refinery on a temporary basis to investigate and remedy potential issues prior to any further incidences and, on May 14, 2021, the EPA directed the Debtors to immediately cease any and all Refinery operations for a period of 60 days pending the completion of certain operational and compliance audits (as discussed further below).   Since that time, the Debtors, with the assistance of certain of the Non-Debtor Defendants, have worked around the clock to comply with the EPA's order, obtain critically needed capital, and chart a path forward that maximizes stakeholder value.   Those efforts recently resulted in the commencement of these cases on July 12, 2021, at which time the Court authorized the Debtors to access DIP financing.   The Debtors, in close coordination with the DIP lenders, prepetition lenders, and certain other stakeholders, are working to chart a path forward that maximizes stakeholder value, including the sale process.

9.     The Debtor filed this adversary proceeding seeking an extension of the stay or injunction against the Class Action Plaintiffs.   By this motion, the Debtor only seeks an order pursuant to section 362 of the Bankruptcy Code extending the automatic stay or, in the alternative, entry of an injunction pursuant to section 105(a) of the Bankruptcy Code for 60 days,

4848-3783-8579.4

to allow the Debtor and its stakeholders the breathing room necessary to focus on critical aspects of its overall restructuring prospects and to determine the best way to proceed in the Class Actions.

10.     The requested relief is necessary to prevent further prosecution of the Class Actions, which the Debtor has determined, in consultation with its DIP lenders and prepetition lenders, will likely negatively impact the Debtor's restructuring efforts notwithstanding the imposition of the stay following the Debtor's Chapter 11 filing.  <u>First</u>, the Debtor's breathing spell has already been interrupted by the significant litigation caused by these Class Actions. Since the Petition Date, court hearings in the Class Actions, briefing schedules, coordination of joint defenses, and review of initial disclosures and discovery have already taxed the Debtor's thin resources which should be focused on potential restructuring options.  The Virgin Islands Court issued an order last week requiring all defendants—ostensibly including the Debtor—to brief the effect of the commencement of the Debtor's Chapter 11 filing on the Class Actions by midnight on Tuesday, July 27, 2021, which has already created costs for the estates by requiring their professionals to address the Class Actions at this critical juncture early in the Chapter 11 Cases.  Moreover, the potential for continuation of the Class Actions with respect to the Debtor and/or the Non-Debtor Defendants will continue to place undue stress and confusion on the Debtor's management, and their relationships with their Non-Debtor Defendants. As the Court is well aware, the Debtors are currently working through critical initial Chapter 11 issues such as their DIP budget, going concern sale alternatives, management of critical vendors, and ongoing regulatory compliance.  While the claims of the Class Action Plaintiffs are important and should ultimately be dealt with by an appropriate court, it is in the best interest of all parties that the Debtor be able focus its resources and efforts on maximizing value for all stakeholders, including the Class Action Plaintiffs.  <u>Second</u>, the interrelationship of the defendants means that severance

of the Class Actions against the Non-Debtor Defendants would be complicated at best, and impossible at worst.  The harm alleged in the Class Actions occurred at the Refinery, which is owned and operated by the Debtors.  Any determination of liability of the Non-Debtor Defendants would implicate the Debtors' Refinery, and thus would allow the Class Action Plaintiffs to try the Debtor's case in absentia in violation of the automatic stay.  Moreover, continued litigation by the Non-Debtor Defendants would necessarily require significant resources from the Debtor in connection with discovery because substantially all of the documents, information, and personnel necessary to prosecute the Class Actions are within the possession of the Debtor.  Put another way, absent the requested relief, the continuation of the Class Actions threatens to continue to require significant resources from the Debtors at a critical juncture when their liquidity is limited and attention focused on efforts to maximize stakeholder value.  Third, the Class Actions are causing undue expense to the Debtor's estate because of the breadth and complication of the issues.  A stay of the Class Actions will allow the Debtor to determine the most efficient way to proceed with these claims.

11.     Accordingly, the Debtor requests that prosecution of the Class Actions against the Non-Debtor Defendants be stayed or enjoined for a period of 60 days, without prejudice of the Debtor to seek a further stay of the Class Actions by this Court before or after the expiration of such 60-day period.

### IV. BACKGROUND

12.     Built in the 1960s, the Refinery and the Limetree Bay Terminal are located on the south-central coast of St. Croix, U.S. Virgin Islands. The Refinery was originally constructed by the Amerada Hess Corp., as the Hess Oil V.I. Corp. (HOVIC) refinery, which later became the HOVENSA refinery.  In 2011, the United States Environmental Protection Agency (the "**EPA**") sued the Refinery's then-owner HOVENSA LLC for violations of the Clean Air Act, 42 U.S.C.

§§ 7801 et seq. (1970), concerning its Refinery operations, which resulted in HOVENSA and the EPA entering into a consent decree. *United States, et al. v. Hovensa LLC*, Case No. 11-cv-00006-RAM-GWC (D.V.I. June 7, 2011), ECF No. 6 ("**Consent Decree**").

13.     In 2015, HOVENSA LLC filed a petition for relief under chapter 11 of the Bankruptcy Code.  *In re HOVENSA LLC*, Case No. 1:15-bk-10003-MFW (Bankr. D.V.I.).  In 2016, Limetree Bay Holdings, LLC, HOVENSA LLC and Hess Oil Virgin Islands Corp. entered into an agreement whereby Limetree Bay Holdings, LLC purchased certain assets from HOVENSA, including the Refinery.  *See In re HOVENSA LLC*, Case No. 1:15-bk-10003-MFW, Asset Purchase Agreement, ECF No. 556, Ex. 1 (Bankr. D.V.I. Jan. 15, 2016).

14.     On February 1, 2021, the Debtors restarted the Refinery. Shortly thereafter, the Refinery began experiencing operational issues, which prompted investigations by the EPA and Virgin Islands Department of Planning and National Resources, as well as a request from the United States Attorney for the Virgin Islands to visit and tour certain operations at the Refinery. *See* Decl. of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions, dated July 12, 2021, ECF No. 8 ("**Shapiro Decl.**"), at ¶¶ 7-8.  On May 12, 2021, an incident occurred at the Refinery—causing a small amount of oil to disperse in certain areas downwind of the Refinery.  *Id.* at ¶ 8.  In response, on May 13, 2021, the Debtors voluntarily ceased all refining operations at the Refinery on a temporary basis to investigate and remedy potential issues prior to any further incidences, and on May 14, 2021, the Debtors received an order from the EPA directing the Debtors to immediately cease any and all Refinery operations for a period of 60 days pending the completion of certain operational and compliance audits.  *Id.*

15.     The Class Actions all arise out of the Refinery's operations, and allegations in the complaints go back to the 2011 Consent Decree.  In the Shirley Action, plaintiffs allege that the Refinery "caused tons of airborne chemical emissions" and seek certification of two classes:  a

"medical monitoring class," consisting of "all persons exposed to sulfur dioxide, particulate, matter oil droplets or other polluting substance emitted from the [Refinery] from February 1, 2021 to present," and a "homeowner class," consisting of property owners on St. Croix who were allegedly subjected to the same substances from February 1, 2021 to present.  Shirley Action, Complaint, ECF No. 1-1, at ¶¶ 1, 76 (D.V.I. June 24, 2021).  However, while plaintiffs have brought a claim for medical monitoring, negligence, and nuisance, they state that they "do not seek damages for personal injury by present action, and expressly reserve same to be brought by separate action(s)."  *Id.* at ¶¶ 90, 96.

16.     In the Charles Action, plaintiffs allege that the Refinery failed "to exercise reasonable care in starting up and operating the refinery and terminal storage facility without the pollution controls needed to avoid class-area harm," and that plaintiffs "seek lost-use-and-enjoyment damages to vindicate private property rights, not enforcement of environmental statutes, regulations, regulatory permits, or claims for personal injury; they seek monetary damages, no injunctive relief."  Charles Action*, Complaint, ECF No. 1-3, at ¶¶ 4-5 (D.V I. June 24, 2021).  In the Charles Action, the class is alleged to be defined as "persons who have resided in the neighborhoods north, northwest, west, and southwest of the Limetree complex on or after January 1, 2020." *Id.* at ¶ 58.

17.     In the Boynes Action, plaintiffs brought claims for negligence, violation of environmental laws, nuisance, medical monitoring, and emotional distress, and alleged that defendants' actions "caused both physical personal injury and real and personal property damage."  Boynes Action, Complaint, ECF No. 1, at ¶ 115 (D.V.I. June 9, 2021).  The class is alleged to be defined as "[a]ll persons who owned property (real and/or personal), and/or operated a business, and/or worked or resided on St. Croix and who have been harmed" by the defendants, since the date the Debtors acquired the Refinery.  *Id.* at ¶ 101.

4848-3783-8579.4

18.     In the Cotton Action, plaintiffs allege that the Refinery "failed to properly store, use, refine, and/or dispose of oil and other chemicals, toxins, and particulates," and as a result, plaintiffs suffered personal injury and damage to property.  Cotton Action, Complaint, ECF No. 1-3, ¶¶ 154, 158 (D.V.I. June 24, 2021).  In that action, plaintiffs assert claims for negligence, nuisance, trespass, violation of the Virgin Islands environmental law, emotional distress, and a claim for medical monitoring.  *Id.* at ¶¶ 151-216.  Plaintiffs allege that the class is defined as "all persons or entities who have suffered injuries and/or damages" from alleged contamination events in 2021, as well as a "separate medical monitoring class."  *Id.* at ¶ 141.

19.     In the Shirley Action and the Cotton Action, plaintiffs filed motions for emergency relief.  The Shirley Action plaintiffs filed a Motion for a Protective Order Regarding Limetree's Communications with Putative Class Members, Shirley Action, ECF No. 1-5 ("**Shirley Emergency Motion**").  In that motion, plaintiffs asked for court oversight over all communications with proposed class members, and they asked the court to void prior settlement agreements.  *Id.* at 10.  On June 25, 2021, Limetree Ventures, Limetree Terminals and Limetree Refining filed an opposition.  Shirley Action, Opposition, dated June 25, 2021, ECF No. 5.

20.     The Cotton Action plaintiffs filed a similar Emergency Motion for Temporary Restraining Order and Preliminary Mandatory Injunction, Cotton Action, ECF No. 1-6 ("**Cotton Emergency Motion**").  In that motion, plaintiffs alleged that the defendants were improperly communicating with purported class members and negotiating settlements and releases. *Id.*  They asked the court to ban Limetree from communicating with potential class members settlements and anything else related to the instant litigation, void release agreements homeowners have previously signed, and order Limetree to clean homes, vehicles and other property due to what plaintiffs characterize as an "oil spill."  *Id.* at 4-5.  On June 30, 2021, Limetree Ventures,

Limetree Terminals and Limetree Refining filed an opposition. Cotton Action, Opposition, dated June 30, 2021, ECF No. 15.

21.     On July 12, 2021 (the "**Petition Date**"), the Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.

22.     On July 14, 2021, the Debtor filed a Notice of Commencement of Chapter 11 Bankruptcy Cases in all four Class Actions.  *See* Boynes Action, ECF No. 48; Shirley Action, ECF No. 12; Cotton Action, ECF No. 82; Charles Action, ECF No. 31.

23.     On July 15, 2021, Judge Wilma A. Lewis held an omnibus hearing on the Shirley Emergency Motion and the Cotton Emergency Motion.  *See* Cotton Action, Minute Entry, ECF No. 95; Shirley Action, Minute Entry, ECF No. 13.  On July 16, 2021, the Virgin Islands Court issued a memorandum opinion and order, attached hereto as <u>Exhibit B</u> (the "**DVI Order**").  *See* Cotton Action, ECF No. 100.  The DVI Order made the following rulings:

- the court required all defendants (ostensibly including the Debtor, notwithstanding the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code) to brief the issue of whether the automatic stay applies to the Non-Debtor Defendants as well, *id.* at 4;

- the court permitted briefing on the Cotton Action plaintiffs' argument for mandatory injunctive relief to require Limetree Ventures and Limetree Terminals, two Non-Debtor Defendants, to clean the "oil spill," including plaintiffs' "homes, cisterns, vehicles and grounds," *id.* at 4-5;

- the court enjoined all defendants, including the Debtor, from soliciting settlement agreements and using a release without the Virgin Island Court's review and approval, *id.* at 7;

- the court deferred its ruling on whether the defendants' previously obtained settlements and releases are deemed invalidated or void, *id.*; and

- the court permitted the Cotton Action plaintiffs to file a motion for remand to the Superior Court of the Virgin Islands by July 23, 2021. *Id.*

24.     The flurry of activity in the Class Actions notwithstanding, the Debtor's Chapter 11 filing has further stretched the Debtor's thin resources and significantly impaired its ability to focus efforts on stabilization and ultimate sale of the Debtor's assets through Chapter 11. In order to aid in these efforts, the Debtor seeks declaratory relief to stay the continued prosecution of the Class Actions against the Non-Debtor Defendants for a period of 60 days, so that the Debtor can obtain the benefits of its own automatic stay.

## V.  **ARGUMENT**

### A.  **A Court May Extend the Automatic Stay to Non-Debtors**

25.     The purpose of the automatic stay is to "give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." *In re Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986).  It is "'one of the fundamental debtor protections provided by the bankruptcy laws.'" *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) (quoting H.R. Rep. No. 95-595, at 340, reprinted in 1978 U.S.C.C.A.N. 5963, 6296); *accord Midlantic Nat'l Bank v. N..J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).

26.     "Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor." *In re HSMKennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006).  Section 362 may be applied to prevent action against a co-debtor when "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a

judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (*quoting A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986)); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (adopting exception from *A.H. Robins Co.*, 788 F.2d at 999); *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010) (recognizing that, in the Fifth Circuit, the automatic stay should be extended "when there is a formal or contractual relationship between the debtor and nondebtors such that a judgment against one would in effect be a judgment against the other"); *Nat'l Oilwell Varco, L.P. v. Mud King Prod., Inc.*, 2013 WL 1948766, at *2 (S.D. Tex. May 9, 2013) (same).

27.     Courts have found that there's an identity between the debtor and the third-party defendant when, for example, the parties and the claims are so inextricably intertwined. *See, e.g., Fed. Life Ins. Co. (Mut.) v. First Fin. Group of Texas, Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980) (holding that stay was to be extended where claims were "inextricably interwoven"); *In re Calpine Corp.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007); *In re Lion Capital Grp.*, 44 B.R. 690, 703-04 (Bankr. S.D.N.Y. 1984) (recognizing "the risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor, would irreparably injure the estates and thus warranted the issuance of a stay"). In *Calpine*, the court extended the stay to a non-debtor because the claims against the non-debtor were based on identical facts as the claims against the debtor, and litigation of those claims could have a collateral estoppel effect on the debtor. *Id.* at 50.  The court in *Calpine* also found that litigation against the non-debtor would distract the debtor from its reorganization efforts. *Id.* (holding that the facts that warranted extension of stay

were sufficient to grant an injunction under section 105 of the Bankruptcy Code because those same facts demonstrated irreparable harm to the debtor).

28.     In this case, extension of the stay is warranted because prosecution of the Class Actions against the Non-Debtor Defendants effectively would exercise control over property the estate. *See A.H. Robins Co., Inc.,* 788 F.2d at 1002 (section 362(a)(3) "directs stays of any action, *whether against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor" (emphasis in original)).    There is no question that the Debtor has a significant, ongoing relationship with the Non-Debtor Defendants in the Class Actions and the Debtor has an integral role in the facts and circumstances surrounding the Class Actions that will render it impossible for the Class Action Plaintiffs to continue litigation against the Non-Debtor Defendants without severely prejudicing the Debtor's rights and adversely impacting the Debtor's estate at this critical juncture.  Since learning of these Class Actions, the Debtor's professionals and management have been on conference calls with multiple lawyers for each of the co-defendants, including local counsel, working to coordinate responses to the requests from the Virgin Islands Court.  Furthermore, a significant portion of the documents, information, and personnel necessary to prosecute the Class Actions—even if solely with respect to the Non-Debtor Defendants—is in possession of the Debtor, which owns and operates the Refinery. Therefore, continuation of the Class Actions against the Non-Debtor Defendants will undoubtedly continue to require the Debtor's management and employees to expend estate resources on the Class Actions (including, potentially, the need to be deposed and respond to discovery requests, among other things).  In the meantime, the Debtor's professionals and management are required to monitor, and essentially participate in, these Class Actions because of the risk of adverse rulings.  This is a particularly troubling possibility given the Debtors' limited liquidity, subject to this Court's consideration of the final DIP financing terms.

29.     In the brief time since the Petition Date, the Class Actions have already dramatically impacted the Debtor notwithstanding the imposition of the automatic stay and without an immediate extension of the stay to the Non-Debtor Defendants, the Debtor's rights will continue to be negatively impacted.  Since the Petition Date, the Virgin Islands Court has entered an order prohibiting all defendants from communicating with potential class members without the Virgin Island Court's review and approval, which may impact the Debtors' ability to negotiate with creditors whose participation may be necessary to document and prosecute a chapter 11 plan in the Chapter 11 cases.  DVI Order at 9.  Further, the Virgin Islands Court has entered an order requiring briefing on invalidating previously obtained settlement and releases, and also ordered the parties to meet and confer to file a proposal to amend the form release by July 26, 2021.  *Id.* at 8-9.  These releases all arise out of alleged injury from operations of the Refinery, and the Debtor is a beneficiary of these releases.  The Virgin Island Court has also ordered briefing on whether the automatic stay should extend to the Non-Debtor Defendants, with the defendants' brief due on July 26, 2021.  *Id.* at 9.  Briefing is also ongoing as to whether Limetree Terminals and Limetree Ventures must provide relief to plaintiffs under a mandatory injunction – again, for operation of the Debtors' Refinery – which, if granted, could have the impact of adjudicating claims against the Debtor's estate in absentia.  *Id.* at 4-5.  The parties have until August 3, 2021, to request the Virgin Islands Court to hold an evidentiary hearing on the mandatory injunction, *id.* at 9, and on July 23, 2021, the plaintiffs in the Cotton Action filed a memorandum in further support of their motion for a mandatory injunction.  Cotton Action, ECF No. 114.  Finally, the Virgin Islands Court required the plaintiffs in the Cotton Action to file a motion for remand by July 23, 2021, which they did.  *See* Cotton Action, ECF No. 112.

30.     Because of the Debtor's relationship with the other Non-Debtor Defendants, the Debtor has had to spend significant time with the Non-Debtor Defendants regarding the Debtor's

4848-3783-8579.4

position on the claims asserted, coordinating issues related to the joint defense against the claims, and review of discovery matters related to the claims that are expected to arise in the future. The Debtor cannot ignore the Class Actions, as long as they are ongoing against the Non-Debtor Defendants, because of the potential impact to the estate.

31.     Without an extension of the stay to Non-Debtor Defendants, the Virgin Islands Court may require Limetree Ventures and Limetree Terminals to clean and remediate plaintiffs' property promptly; it may not approve future communications with plaintiffs; it may invalidate settlements; and it may remand an action to Superior Court of the Virgin Islands. The interrelationship of the Class Action defendants and the defendants' risk of liability require an extension of the stay. Courts have extended the stay to non-debtor defendants when continued prosecution of a claim might disadvantage the debtor in future proceedings. *See, e.g., Calpine Corp.*, 354 B.R. at 50 (noting that if the litigation at issue advanced without the debtor, "issues regarding [the debtor's] liability, its defenses and any damages that may be awarded, will be determined in [the debtor's] absence exposing [the debtor] to a significant risk of collateral estoppel, stare decisis and evidentiary prejudice"); *In re Lion Capital Grp.*, 44 B.R. 690, 703-04 (Bankr. S.D.N.Y. 1984) (recognizing "the risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor, would irreparably injure the estates and thus warranted the issuance of a stay").

32.     In addition, the Debtors and the Non-Debtor Defendants all have contractual relationships relating to the Debtors' operations. Allegations in the Cotton Complaint, for example, go as far back as the 2011 Consent Decree. *See* Cotton Class Action, Complaint, at ¶ 54. The Debtor's request for a brief respite from dealing with these issues is appropriate so that the Debtor can ensure that its rights are not abrogated by the Class Actions. *See Reliant Energy*

*Servs., Inc.*, 349 F.3d at 825; *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010) (recognizing that, in the Fifth Circuit, the automatic stay should be extended "when there is a formal or contractual relationship between the debtor and nondebtors such that a judgment against one would in effect be a judgment against the other"); *Nat'l Oilwell Varco, L.P. v. Mud King Prod., Inc.*, 2013 WL 1948766, at \*2 (S.D. Tex. May 9, 2013) (same).

33.    Similarly, given the amount of overlapping issues in the Class Action, the Class Actions would distract the Debtor's management and professionals.  *See In re The Fairchild Corp.*, No. 09-10899 CSS, 2009 WL 4546581, at \*6 (Bankr. D. Del. Dec. 1, 2009) (denying a request to modify the stay to allow state court prosecution of a debtor because of the distraction it would cause to the debtor's management and professionals); *see also Calpine Corp,*, 354 B.R. at 48 (holding that injunctive relief is appropriate if "enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects").

34.    The next 60 days are critical for the trajectory of the Debtors' cases.   The Debtor's focus on preparation of budgets, vendor and personnel retention, safety compliance and sale efforts are critical over the next 60 days and will shape the ultimate recovery for all creditors including any claims of the Class Action Plaintiffs that may be ultimately allowed.  The Debtor's breathing spell will be nonexistent if required to not only monitor, but essentially participate in the Class Actions to protect their rights and/or provide documents, information, and/or personnel necessary for the prosecution of the Class Actions at least with respect to the Non-Debtor Defendants. *HSM Kennewick, L.P.*, 347 B.R. at 571 (explaining that the breathing room protects creditors as well as debtors so that the debtors can institute an organized repayment plan).

35.    Finally, all of these issues, at this early point in the case, are causing and would continue to cause undue expenses to the Debtor's estate.  If the stay is not extended, the Debtor

will need to react to these Class Action claims, rather than systematically and thoughtfully approaching the claims of the Class Action Plaintiffs and all other creditors. "All parties benefit from the fair and orderly process contemplated by the automatic stay and judicial relief procedure." *In re Lile*, 103 B.R. 830, 836 (Bankr. S.D. Tex. 1989) (internal quotations omitted), *aff'd*, 161 B.R. 788 (S.D. Tex. 1993), *aff'd in part sub nom. Matter of Lile*, 43 F.3d 668 (5th Cir. 1994).

36.     Because the Class Actions against the Non-Debtor Defendants will cause irreparable injury to the Debtor's estate, the Debtor requests the Court extend the stay to the Non-Debtor Defendants for 60 days.

### B. Section 105 of the Bankruptcy Code Permits the Court to Enjoin the Class Actions for 60 Days

37.     In addition to section 362, Bankruptcy Code section 105(a) empowers this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Firth Circuit has recognized that this Court has "broad discretionary powers" under section 105 of the Bankruptcy Code, which gives the Court authority "to stay proceedings against nonbankrupt entities." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n.3 (5th Cir. 1987).

38.     A section 105 injunction to stay lawsuits against non-debtors may be used when, for example, allowing the litigation to advance would amount to allowing a suit against the debtor to proceed. *See In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995). For example, an injunction is appropriate when "the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor" and "when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Id*.

39.     Separately and independently, Limetree Refining requests the Court to stay or enjoin the Class Actions for the next 60 days pursuant to its "broad discretionary powers" under

section 105 of the Bankruptcy Code.  *S.I. Acquisition, Inc.*, 817 F.2d at 1146 n.3; *Zale Corp.,* 62 F.3d at 761.

40.     Injunctive relief under Bankruptcy Code section 105(a) requires a movant to meet a four-part test:  (a) a substantial likelihood of irreparable injury absent an injunction; (b) a substantial likelihood of success on the merits; (c) balance of the equities favoring the movant; and (d) a demonstration that the injunction would serve the public interest. *See, e.g., In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d at 1188–89 (citations omitted*); In re FiberTower Network Sen's. Cor*p., 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012).  The Debtor can meet each of these elements here.

        a.  **The Class Actions, if permitted to continue, will pose a substantial likelihood of irreparable injury to the Debtor and its estate.**

41.     Continuation of the Class Actions for the next 60 days would cause irreparable injury to the Debtor and its estate because of the interwoven nature of the claims.  An action against the Non-Debtor Defendants, particularly any non-debtor affiliate, in effect would try the Debtor in absentia.  For example, any ruling on the Class Action plaintiffs' motion for a mandatory injunction requiring Limetree Ventures an Limetree Terminals to "clean up" an alleged "oil spill" will have the effect of litigating a claim that is also being asserted against Limetree Refining for operations of the Debtors' Refinery.  *See In re Calpine Corp.*, 354 B.R. at 50 ("In light of the identity of interest between Calpine and Fireman's, Calpine will suffer irreparable harm if the Nevada Litigation continues through the risk of collateral estoppel and evidentiary prejudice, a drain on its estate due to its indemnification obligations to Fireman's and a significant burden and distraction of key employees from its restructuring efforts."); *In re Lion Capital Grp.*, 44 B.R. at 703–04 (collateral estoppel risk supported extending automatic stay).

42.     The Class Actions would also cause irreparable harm because its continuation will distract key personnel from their obligations in these Chapter 11 proceedings. *See, e.g., In re*

*Calpine Corp.*, 354 B.R. at 50. Management and professionals should be focused on steering the Debtor through these Chapter 11 proceedings and maximizing the value of the Debtor's estate for the benefit of all parties in interest. The risk of distraction and further injury to the Debtor weighs in favor of enjoining the Class Actions. *See, e.g.*, *In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (staying securities class actions based in part on distraction to key personnel); *In re The Fairchild Corp.*, No. 09-10899 CSS, 2009 WL 4546581, at *6 (Bankr. D. Del. Dec. 1, 2009) (denying a request to modify a stay because of the distraction to the debtor's management and professionals).

### b.   Debtor Defendant Has a Substantial Likelihood of Success on the Merits of This Adversary Proceeding

43.     Courts in this Circuit have explained that the focus of the "substantial likelihood" element is on "the purpose of the requested injunction." *In re FiberTower Network Servs. Corp.*, 482 B.R. at 182 (quoting Collier on Bankruptcy § 105.03[l][a] (16th ed. 2012)). The crux of the inquiry is "whether this court is authorized and likely to grant the requested relief." *Id.* at 183. Here, for the reasons set forth above, the Debtor is likely to prevail on the merits of its request for declaratory relief and for an injunction. *See* 11 U.S.C. § 105(a); *In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 n.3; *In re Zale Corp.*, 62 F.3d at 761.

### c.   Continuing the Class Action Risks Irreparable Harm to the Debtor

44.     The likelihood of irreparable harm to the Debtor from the continuation of the Class Action for 60 days far outweighs any risk of harm to the Class Action Plaintiffs should this Court enjoin the Class Action. The Class Action Plaintiffs will suffer no material harm from having to wait. *See, e.g.*, *In re Am. Film Techs., Inc.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) (weighing this factor in favor of enjoining the litigation where non-debtor plaintiff was "not being asked to forego his prosecution against the individual defendants, only to delay it"). As noted above, the continuation of the Class Actions will continue to impair stakeholder value by

requiring the Debtor, its personnel, and advisors to provide information, documents, and/or personnel necessary to prosecute the Class Actions.  The foregoing will distract the Debtor and its advisors at this critical juncture when they are immersed in discussions with their stakeholders regarding the budget to fund these cases, commencement of the sale process, and other stakeholder value preservation efforts.  Furthermore, the Debtor does not have sufficient funding to participate in these efforts during the remainder of these cases.  In contrast, because the Debtor is only requesting a 60-day injunction, and when the Class Actions were only filed within the last 30-60 days, the risk of harm to the Class Action Plaintiffs, is very small.  The documents and information necessary for the Class Actions will be preserved during such period, and the Class Action Plaintiffs will be free to prosecute the Class Actions at a later time, without prejudice to any of their rights.

### d. Enjoining the Class Action Will Enable An Orderly Resolution of the Debtor's Bankruptcy Case

45.     The injunctive relief sought will serve the public interest by promoting the Debtor's speedy and successful conclusion of these bankruptcy proceedings—a benefit to all parties—and advancing the objectives of the automatic stay. As noted above, the requested relief is necessary for the Debtor to maximize stakeholder value at a time when they are immersed in discussions with their stakeholders regarding the budget to fund these cases, commencement of the sale process, and other stakeholder value preservation efforts.  Numerous courts have held in cases, similar to the Chapter 11 Cases, that injunctions that facilitate reorganization serve the public interest. *In re FiberTower Network Services Corp*., 482 B.R. at 189; *Venzke Steel Corp. v. LLA, Inc. (In re Venzke Steel Corp.),* 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992); *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.),* 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); SAS Overseas *Consultants v. Benoit*, No. Civ. A. 99–1663, 2000 WL 140611, at *5 (E.D. La. Feb. 7, 2000).

46.     Based on the foregoing, the Debtor respectfully requests a 60-day injunction under section 105 of the Bankruptcy Code to enjoin the Class Action against the Defendants.

## VI. BASIS FOR EMERGENCY RELIEF

47.     The Debtor respectfully requests emergency consideration of this motion in accordance with Bankruptcy Local Rule 9013-1(i). In particular, there is a deadline of midnight on Tuesday, July 27, 2021, to brief these same issues in the Virgin Islands Court.  To the extent practicable, the Debtor requests that the Court enjoin the Class Action with respect to the Non-Debtor Defendants by 4:00 p.m. (CT) on Tuesday, July 27, 2021.  The Debtor believes that the relief requested in this motion is critical to avoid the Debtor having to expend unnecessary costs and expenses related to the Class Action, preserve the resources of the Debtor's estate, and maintain the viability of the Debtor's operations and negotiations during this critical stage of these Chapter 11 cases.  Accordingly, the Debtor respectfully requests that the Court approve the relief requested in this motion on an emergency basis.

**WHEREFORE,** the Debtor respectfully requests that Court extend the automatic stay to the Non-Debtor Defendants and, additionally or in the alternative, issue an injunction to prevent prosecution of the Class Actions for 60 days.

RESPECTFULLY SUBMITTED this 26th day of July, 2021.

4848-3783-8579.4

**BAKER & HOSTETLER LLP**

/s/ Elizabeth A. Green
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
      jparrish@bakerlaw.com


**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com
*(Admitted pro hac vice)*

*Proposed Counsel for the Debtors and Debtors
in Possession*

### Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Elizabeth A. Green
Elizabeth A. Green


### Certificate of Service

I certify that on July 26, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Elizabeth A. Green
Elizabeth A. Green

4848-3783-8579.4